******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# YVONNE MICHAUD *v.* TRAVELERS INDEMNITY COMPANY
## (AC 46939)

Seeley, Westbrook and Prescott, Js.

*Syllabus*

The plaintiff appealed from the decision of the trial court denying her application to vacate an arbitration award granting the defendant's motion for summary judgment and dismissing her complaint alleging age discrimination with prejudice. Following the commencement of the civil action against the defendant, the parties, by agreement, proceeded to arbitration on all claims in the complaint. The plaintiff claimed that the court improperly failed to vacate the award because the arbitrator manifestly disregarded the law. *Held*:

This court dismissed the appeal for lack of subject matter jurisdiction, as the plaintiff did not have a statutory right to appeal from the trial court's denial of her application to vacate the award and the trial court's denial did not implicate either of the two prongs set forth in *State* v. *Curcio* (191 Conn. 27).

Argued October 7, 2024—officially released May 6, 2025

*Procedural History*

Action to recover damages for employment discrimination on the basis of age, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, granted the parties' motions for stay to compel arbitration; thereafter, the court, *Buckley, J.*, denied the plaintiff's application to vacate the arbitration award, and the plaintiff appealed to this court. *Appeal dismissed*.

*James V. Sabatini*, for the appellant (plaintiff).

*Allison P. Dearington*, with whom was *Jessica L. Chamberlin*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The plaintiff, Yvonne Michaud, appeals following the trial court's denial of the application to vacate an arbitration award she filed in her

pending civil action against the defendant, Travelers Indemnity Company. On appeal, the plaintiff claims that the court, *Buckley, J.*, improperly failed to vacate the arbitration award in accordance with General Statutes § 52-418[1] because, contrary to the conclusions of the court, the arbitrator manifestly disregarded the law when she granted the defendant's motion for summary judgment and dismissed with prejudice the plaintiff's complaint of age discrimination in violation of General Statutes § 46a-60 (b) (1).[2] Specifically, the plaintiff

---

[1] Chapter 909 of the General Statutes pertains to "Arbitration Proceedings." Effective October 1, 2018, the legislature enacted part I of Chapter 909, referred to as the Revised Uniform Arbitration Act (revised act), General Statutes §§ 52-407aa through 52-407eee. Pursuant to General Statutes § 52-407cc, subject to certain exceptions, "an agreement to arbitrate made on or after October 1, 2018," is governed by the revised act. Pursuant to General Statutes § 52-407eee, agreements executed prior to October 1, 2018, remain governed by part II of Chapter 909, specifically, General Statutes §§ 52-408 through 52-424, inclusive. The record reflects that the arbitration agreement in this case was executed on May 8, 2018. As such, the arbitration agreement is governed by part II of chapter 909. See also *Torrington* v. *Council 4, AFSCME, AFL-CIO, Local 442*, 224 Conn. App. 237, 244–46, 312 A.3d 1112 (2024) (explaining that part II of chapter 909 applies to agreements executed prior to October 1, 2018.)

General Statutes § 52-418, which is included in part II of chapter 909, provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . ."

Our Supreme Court has recognized "manifest disregard of the law" as a narrow ground for vacating arbitration awards that is encompassed within § 52-418 (a) (4). (Internal quotation marks omitted.) *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992).

[2] General Statutes § 46a-60 is a provision of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq. Section 46a-60 provides in relevant part: "(b) It shall be a discriminatory practice in

argues that the arbitrator manifestly disregarded the law "by failing to consider the evidence explaining why [her] objection to the motion for summary judgment was filed late,"[3] "by granting summary judgment where the defendant had not satisfied its burden in establishing its entitlement to summary judgment as to the pay raise and bonus denials," and by concluding, nonetheless, that the "plaintiff could not establish [that she suffered] an adverse employment action." We cannot reach the merits of the claims the plaintiff has raised on appeal, however, because the court's denial of the application to vacate the arbitration award, in the context of this case, is not an appealable final judgment. Accordingly, we dismiss this appeal for lack of subject matter jurisdiction.

The following facts[4] and procedural history are relevant to our resolution of this appeal. The plaintiff had been employed by the defendant for roughly forty-five years when she resigned on May 10, 2019.[5] She was

---

violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness, status as a veteran or status as a victim of domestic violence . . . ."

Section 46a-60 was amended after the plaintiff's employment ended in May, 2019; see Public Acts 2019, No. 19-16, § 4; and again after she initiated this action in 2021; see Public Acts 2022, No. 22-78, §§ 7 and 8; but those changes are not relevant to this appeal. For convenience, we refer to the current revision of § 46a-60.

[3] In her application to vacate the arbitration award, the plaintiff argued that the arbitrator's decision in this regard reflected that she was "guilty of misconduct" in violation of § 52-418 (a) (3).

[4] The factual record before us includes the pleadings and exhibits filed with the trial court and the transcript of the hearing on the plaintiff's application to vacate the arbitration award. No evidence was offered at that hearing.

[5] The plaintiff held various positions throughout the course of her employment with the defendant. When she resigned, she had been working in the

approximately sixty-nine years old at the time of her resignation.

On April 9, 2021, the plaintiff commenced this civil action against the defendant by way of a one count complaint, in which she alleged that the defendant had discriminated against her on the basis of her age in violation of § 46a-60 (b) (1). Specifically, she alleged that, because of her age, "she had been passed over for promotion, received no annual raises and did not get any compensation for . . . extra work she performed." She further alleged that the defendant treated her "adversely different from similarly situated younger employees."

On June 2, 2021, the defendant filed a motion to stay the trial court proceedings and to compel arbitration in accordance with its arbitration policy, which made "arbitration the required and exclusive forum for the resolution of all past, present and future employment-related disputes based on legally protected rights . . . ."[6] In response to the defendant's motion and demand "that all claims asserted in [the plaintiff's] complaint be arbitrated," the plaintiff filed, that same day, a motion to stay the proceedings "until such arbitration has been had in accordance with the terms of the agreement." The court, *Noble, J.*, granted both motions "by agreement." See General Statutes § 52-409.[7]

defendant's "Business Insurance Actuarial & Analytics Department for about thirteen years."

[6] The record reflects that, between 2011 and 2018, the defendant required all of its United States employees to certify annually that they reviewed and agreed to comply with its arbitration policy and that the plaintiff had done so in each of those years.

[7] General Statutes § 52-409 provides: "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making

Thereafter, the plaintiff filed a demand for arbitration and, on December 16, 2021, the arbitrator issued a comprehensive scheduling order that established deadlines for, among other things, pleading, discovery, and the filing of dispositive motions, and set dates for a hearing on the merits. The scheduling order also specified that deadlines "will be strictly enforced unless a party has made a showing of good cause in any request for an extension, in which case extensions will be freely given as long as the hearing dates are not affected."

On October 17, 2022, the defendant timely filed a motion for summary judgment[8] with the arbitrator, wherein it argued that it was entitled to judgment as a matter of law because the plaintiff could not meet the initial burden of establishing a prima facie case of age discrimination in accordance with the "familiar burden shifting standard articulated in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, [802, 93 S. Ct. 1817, 36 L. Ed. 2d 668] (1973)," and that, even if she could, the defendant "had legitimate, nondiscriminatory reasons for not promoting [the plaintiff] . . . and . . . there [was] no evidence that those reasons were a mere pretext to cover up unlawful age discrimination."[9] Specifically, the defendant argued that the plaintiff's voluntary

application for the stay shall be ready and willing to proceed with the arbitration."

[8] Attached to the motion were twenty-two exhibits, which included sworn declarations from Jason Manganello, who was a senior director employed by the defendant and to whom the plaintiff reported, either directly or through another supervisor, from 2010 to 2019, Kristin Deffley, who was employed by the defendant as a human resources manager, and Brian Hoffman, who was employed by the defendant as a vice president of state and bureau regulatory affairs; the plaintiff's affidavit of illegal discrimination; excerpts from the plaintiff's deposition; and several emails and documents pertaining to the plaintiff's employment and her resignation. The defendant subsequently attached its motion, with exhibits, to its opposition to the plaintiff's motion to vacate the arbitration award.

[9] "If a plaintiff cannot prove directly the reasons that motivated an employment decision, the plaintiff may establish a prima facie case under the *McDonnell Douglas-Burdine* or 'pretext' model of analysis. . . . [See *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).] [T]o establish a prima facie case of discrimination

retirement was not an adverse employment action, that the circumstances surrounding the defendant's promotion decisions did not give rise to an inference of discrimination, that the defendant did not promote the plaintiff because of poor work performance and conduct, and that the plaintiff could not establish that these legitimate, nondiscriminatory reasons were a pretext for age discrimination.

The original deadline for the plaintiff to file her opposition to the defendant's motion for summary judgment was October 31, 2022, but she requested and received a seven day extension of time, up to and including November 7, 2022.[10] The plaintiff's counsel did not, how-

. . . the complainant must demonstrate that (1) [she] is in the protected class; (2) [she] was qualified for the position; (3) [she] suffered an adverse employment action; and (4) . . . the adverse action occurred under circumstances giving rise to an inference of discrimination. . . . The level of proof required to establish a prima facie case is minimal and need not reach the level required to support a jury verdict in the plaintiff's favor. . . .

"Under the *McDonnell Douglas-Burdine* model, the burden of persuasion remains with the plaintiff. . . . Once the plaintiff establishes a prima facie case, however, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating (not proving) some legitimate, nondiscriminatory reason for the plaintiff's rejection. . . . Because the plaintiff's initial prima facie case does not require proof of discriminatory intent, the *McDonnell Douglas-Burdine* model does not shift the burden of persuasion to the defendant. Therefore, [t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. . . . Once the defendant offers a legitimate, nondiscriminatory reason, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the proffered reason is pretextual." (Citations omitted; internal quotation marks omitted.) *Jones* v. *Dept. of Children & Families*, 172 Conn. App. 14, 24–25, 158 A.3d 356 (2017).

"In the context of summary judgment, regardless of [*McDonnell Douglas-Burdine*'s] burden-shifting framework, it is axiomatic that a defendant seeking summary judgment bears the burden to show the absence of a genuine fact issue for trial. . . . Accordingly, the burden [is] placed on [the defendant] to show the absence of a genuine fact issue . . . ." (Internal quotation marks omitted.) *Femia* v. *Meriden*, 223 Conn. App. 1, 12 n.9, 307 A.3d 312 (2023).

[10] After granting the plaintiff's requested extension, the arbitrator suggested in a November 4, 2022 email correspondence to both parties' counsel that the plaintiff's extension "will necessitate a comparable extension for

ever, file an opposition on or before the extended deadline.

On November 10, 2022, the defendant's counsel sent an email to the arbitrator, on which she copied the plaintiff's counsel and four other individuals from the plaintiff's counsel's office, indicating that, because the plaintiff had "not submitted an objection to [the defendant's] summary judgment motion [by the extended deadline], we will not be submitting a reply by Monday's [November 14, 2022] deadline."

On November 22, 2022, the defendant's counsel submitted to the arbitrator, by an email on which the plaintiff's counsel was copied, the defendant's witness and exhibit lists for the arbitration hearing, which was scheduled to commence on December 6, 2022. Immediately thereafter, the plaintiff, through counsel, submitted to the arbitrator, by an email on which the defendant's counsel was copied, the plaintiff's objection to the defendant's motion for summary judgment. The plaintiff's counsel then submitted to the arbitrator, later that same evening, his own affidavit in which he averred that he mistakenly thought that he had filed the objection on November 7, 2022, and realized on November 22, 2022, that he had not. He explained that he "discovered that the email [he] drafted on November 7, 2022, to send out the [plaintiff's] objection to [the defendant's] motion for summary judgment was not sent. The email had remained in draft format." The plaintiff's counsel further averred that when he discovered his error, he "immediately clicked 'send' and the email was sent."

On November 23, 2022, the defendant's counsel objected, by email, to the arbitrator considering the

_____

[the defendant] to reply" and that the hearing dates might, in turn, need to be rescheduled. The defendant's counsel advised, in response, that she would not require an extension of the November 14, 2022 deadline and that she would "prefer that the hearing dates remain as scheduled, as I will be commencing parental leave on or about [December 19]."

plaintiff's "belated objection to [defendant's] motion for summary judgment." The arbitrator sustained counsel's objection, expressly stating, in a responsive email, that "[the plaintiff's] objection and affidavit will not be considered."

On December 6, 2022, the arbitrator issued her decision granting the defendant's motion for summary judgment and dismissing the plaintiff's claim with prejudice.[11] The arbitrator concluded that the defendant met its burden of establishing that there were no genuine issues to be heard with respect to the third and fourth elements of the conjunctive test set forth in the first prong of the *McDonnell Douglas-Burdine* burden shifting standard. See footnote 9 of this opinion. The arbitrator explained that "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. . . .

"[The plaintiff] admits that she voluntarily resigned. [F]urthermore, contemporaneous records—comprising performance reviews, emails, and [the plaintiff's] own deposition—substantiate that the circumstances surrounding her resignation were such that this resignation cannot be construed as a constructive discharge/an adverse employment action. [The plaintiff's] allegations are pure unsubstantiated speculation. Performance reviews, inter alia, also, support the legitimacy of [the defendant's] stated reason for not promoting her.

---

[11] The arbitrator's decision is dated December 5, 2022, but the parties agree that it was not issued until December 6, 2022.

"Accordingly, [the plaintiff] cannot prove that she 'suffered an adverse employment action,' inter alia. Thus, her claim for relief for age discrimination must be denied." (Citation omitted.) The arbitrator did not consider the plaintiff's untimely objection before she granted the motion for summary judgment.

On December 29, 2022, the plaintiff filed, in her pending Superior Court action, a motion to vacate[12] the arbitrator's decision[13] and, in accordance with the briefing schedule that the court, *Graham, J.*, entered thereafter, she filed her brief in support thereof on March 6, 2023. The plaintiff claimed that the arbitrator was guilty of misconduct in violation of § 52-418 (a) (3) and that "the arbitrator's decision was in manifest disregard of the law" in violation of § 52-418 (a) (4). Specifically, the plaintiff argued that the arbitrator's refusal to consider her untimely objection to the defendant's motion for summary judgment constituted misconduct and that the arbitrator "chose to ignore governing law" when she concluded that the "plaintiff could not prove she suffered an adverse employment action." She maintained, therefore, that the court should vacate the arbitrator's decision and remand the case "back to arbitration for further consideration consistent with the court's order."

---

[12] The applicable statutes pertaining to "Arbitration Proceedings"; see footnote 1 of this opinion; appear to use the terms "application" and "motion" interchangeably. See, e.g., General Statutes § 52-420. In light of the fact that the plaintiff filed her "application" to vacate the arbitrator's award within the context of a pending Superior Court proceeding that had been stayed, by agreement, until the arbitration had occurred; see General Statutes § 52-409; the plaintiff's filing has the attributes of a motion rather than an independent application. For this reason, we refer to the plaintiff's "application" as a "motion" throughout this opinion.

[13] Although we recognize that "[t]he decision rendered by the arbitrator upon the controversy submitted for arbitration constitutes the arbitration *award* . . . [and that] [a] final award is [o]ne [that] conclusively determines the matter submitted and leaves nothing to be done except to execute and carry out [its] terms"; (emphasis added; internal quotation marks omitted) *Pickard* v. *Dept. of Mental Health & Addiction Services*, 210 Conn. App. 788, 797–98, 271 A.3d 178 (2022); the "award" in this case is the arbitrator's

On April 6, 2023, the defendant filed an opposition to the plaintiff's motion to vacate. The defendant did not, however, in that opposition, request the court to confirm the arbitrator's decision.[14] Nor did the defendant file, contemporaneously with its objection, a separate application or motion to confirm the arbitrator's decision. Thus, in responding to the plaintiff's motion to vacate, the defendant did not seek to invoke the provisions of General Statutes § 52-417, which provides in relevant part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the [S]uperior [C]ourt for the judicial district in which one of the parties resides . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

The court, *Buckley, J.*, held a hearing on July 10, 2023, and, on September 8, 2023, issued a decision denying the plaintiff's motion to vacate the arbitrator's decision. After reciting the principles that apply to a court's review of an arbitration award, the court determined "that the arbitrator's ruling granting the defendant's motion for summary judgment was not reached in manifest disregard of the law. The arbitrator made it clear that the plaintiff did not carry her burden on the third and fourth prongs of the *McDonnell Douglas* test." The

decision granting the defendant's motion for summary judgment, which awards the plaintiff nothing and establishes no terms to be executed and carried out. We therefore refer to it as a "decision" throughout this opinion.

[14] The defendant's sole claim in its opposition was that the court should not vacate the arbitrator's decision. Specifically, the defendant argued that (1) the plaintiff's argument that the arbitrator improperly concluded that she had not suffered an adverse employment action was flawed both substantively and procedurally and failed, therefore, to establish that the arbitrator had manifestly disregarded the law, and (2) the arbitrator's refusal to consider an untimely brief is not "positive" misconduct as contemplated by § 52-418 (a) (3), and, even if it were, the plaintiff failed to establish that she was prejudiced by the decision in this regard.

court further determined, with respect to the plaintiff's misconduct claim, that "[a]rbitrators have broad discretion to enforce deadlines" and that "[t]he arbitrator was well within her discretion to decline to consider the plaintiff's belated objection to the defendant's motion for summary judgment; consequently, the court does not find that the arbitrator committed misconduct in refusing to consider it."

After the court rendered its decision denying the motion to vacate, neither party sought to have the court confirm the arbitrator's decision.[15] Moreover, neither party requested that the court render a final judgment in the action in accordance with the arbitrator's decision, or a "judgment or decree upon [the] award." See General Statutes § 52-423.[16] Rather, the plaintiff filed this appeal from the court's "decision denying the plaintiff's application to vacate the arbitrator's award."

Prior to oral argument before this court, we directed the parties to be prepared to address "whether the plaintiff's appeal from the trial court's denial of her application to vacate the arbitration award should be dismissed for lack of a final judgment. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 495–98, [857 A.2d 893] (2004), cert. denied, 544 U.S. 974, [125 S. Ct. 1826, 161 L. Ed. 2d 723] (2005) (*Hartford Steam Boiler*); General Statutes § 52-423; *State* v. *Curcio*, 191 Conn. 27, 31, [463 A.2d 566] (1983)."[17] In response to that

---

[15] Either party could have filed a timely application or motion to confirm the arbitrator's December 6, 2022 decision on or before December 6, 2023. See General Statutes § 52-417.

[16] General Statutes § 52-423 provides: "An appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions."

[17] Although the defendant did not file a motion to dismiss this appeal or argue in its brief that the appeal should be dismissed for lack of a final judgment, it is well settled that "[w]e [may raise], on our own motion, the question of whether the plaintiff's appeal has been taken from a final judgment. . . .

order, the plaintiff argued to this court, through counsel, that, by denying the motion to vacate, the court "in essence was confirming" the arbitrator's decision and that consequently, this court has jurisdiction over the appeal. See General Statutes § 52-423. The plaintiff's counsel also suggested that, if the procedural posture of this appeal does present a final judgment problem, that problem can "be cured by obtaining a final judgment now."

In response, the defendant argued, through counsel, that the court's denial of the motion to vacate is not an appealable order and that the plaintiff's action remains pending in the trial court "with no final judgment" having been rendered. The defendant maintains, therefore, that we do not have subject matter jurisdiction to consider the merits of this appeal.

We agree with the defendant. Specifically, we conclude that (1) the plaintiff does not have a statutory right to appeal from the court's denial of her motion to vacate the arbitrator's decision and (2) the court's denial does not implicate either of the two prongs set forth in *State* v. *Curcio*, supra, 191 Conn. 31. Accordingly, we dismiss this appeal.

"We begin our analysis by recognizing that [t]he lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law . . . . We commence the discussion of our appellate jurisdiction by recognizing that there is no constitutional right to an appeal. . . . Article fifth,

"The lack of a final judgment implicates the authority of this court to hear the appeal because it is a jurisdictional defect. . . . Thus, even where the appellee fails to bring to our attention the lack of a final judgment, either by motion to dismiss or in its brief, or at oral argument, we must, nonetheless, act sua sponte." (Internal quotation marks omitted.) *Mase* v. *Riverview Realty Associates, LLC*, 208 Conn. App. 719, 726, 265 A.3d 944 (2021).

§ 1, of the Connecticut constitution provides for a Supreme Court, a Superior Court and such lower courts as the [G]eneral [A]ssembly shall . . . ordain and establish, and that [t]he powers and jurisdiction of these courts *shall be defined by law*. . . . To consider the . . . [plaintiff's] claims . . . we must apply the law governing our appellate jurisdiction, which is statutory. . . . The legislature has enacted . . . [General Statutes] § 52-263, which limits the right of appeal to those appeals filed by aggrieved parties on issues of law from final judgments. Unless a specific right to appeal otherwise has been provided by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim . . . . Further, we have recognized that limiting appeals to final judgments serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings. . . .

"Thus, [a]s a general rule, an interlocutory ruling may not be appealed pending the final disposition of a case. . . . In determining whether a judgment or a ruling is an immediately appealable final judgment, courts have routinely looked to a statute's text to see if the legislature has provided an express right to appeal. . . . In those instances [in which] the legislature has not provided such an express right, our courts then continue to consider whether the right at issue implicates one of the two prongs set forth in *State* v. *Curcio*, [supra, 191 Conn. 31]." (Emphasis in original; internal quotation marks omitted.) *Torrington* v. *Council 4, AFSCME, AFL-CIO, Local 442*, 224 Conn. App. 237, 242–43, 312 A.3d 1112 (2024).

Accordingly, we turn first to § 52-423, which "expressly confers on parties the right to appeal from orders related to the judicial enforcement of arbitration awards"; *Blondeau* v. *Baltierra*, 337 Conn. 127, 135, 252

A.3d 317 (2020); to determine whether it provides the plaintiff with a specific right to appeal from the denial of her motion to vacate the arbitration award. "To the extent that our review requires us to construe statutory provisions, this presents a legal question over which our review . . . is plenary." (Internal quotation marks omitted.) *Rubin* v. *Brodie*, 228 Conn. App. 617, 637, 325 A.3d 1096 (2024).

As previously noted, § 52-423 provides that "[a]n appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions." "[Our Supreme Court has] explained that [t]he final judgment in an arbitration proceeding is ordinarily an order of the court vacating, modifying or confirming the arbitrator's award." (Internal quotation marks omitted.) *Blondeau* v. *Baltierra*, supra, 337 Conn. 136. Indeed, our Supreme Court has determined that, if "the trial court did not vacate the award, or otherwise confirm, modify or correct it, the judgment does not constitute an appealable final judgment pursuant to [§ 52-423]." *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 496.

Moreover, in *Hartford Steam Boiler*, our Supreme Court strictly applied the provisions of § 52-423 to conclude that a trial court's remand order to an arbitration panel for a rehearing to clarify an award was not an appealable final judgment. Specifically, our Supreme Court determined that, because the trial court did not intend by its order "to vacate the award and direct a rehearing pursuant to § 52-418 (b)"; id., 480; but, rather, intended to leave the award intact and remand it to the panel solely for clarification, § 52-423 did not provide it with jurisdiction to review the merits of the claims raised on appeal. Id., 496.

In the present case, the court did not render a final judgment in the defendant's favor and dispose of the plaintiff's complaint, nor did it, in the words of the statute, render a judgment or decree upon the award. Moreover, and to be clear, the plaintiff has appealed from the court's order *denying* her motion to vacate the arbitration award, which, like the order in *Hartford Steam Boiler*, did not vacate the arbitrator's decision. The *denial* of a motion to vacate, however, is not identified in § 52-423 as an order from which an appeal may be taken, and, thus, that statute does not, by its terms, provide the plaintiff with a right to appeal. See id.

The plaintiff nonetheless maintains that the court's denial of her application to vacate the arbitration award constitutes an appealable final judgment because it effectively confirmed the award. We disagree.

We begin by observing that, because "[t]he right to an appeal is . . . a statutory privilege available to one who strictly complies with the statutes and rules on which the privilege is granted"; *Chanosky* v. *City Building Supply Co.*, 152 Conn. 449, 451, 208 A.2d 337 (1965); "[t]he conditions of the statute must therefore be met to have a valid appeal." (Internal quotation marks omitted.) *State* v. *S & R Sanitation Services, Inc.*, 202 Conn. 300, 307, 521 A.2d 1017 (1987). To this end, we acknowledge that, if the court's order effectively confirmed the award as the plaintiff claims, the conditions of § 52-423 would be satisfied. See, e.g., *In re Haley B.*, 262 Conn. 406, 412–13, 815 A.2d 113 (2003) ("we examine the practical effect of the trial court's ruling in order to determine its nature"); see also *U.S. Equities Corp.* v. *Ceraldi*, 186 Conn. App. 610, 614 n.5, 200 A.3d 747 (2018) (practical effect of court ruling determined appealability), cert. denied, 330 Conn. 971, 200 A.3d 1151 (2019). We do not agree with the plaintiff, however, that the practical effect of the court's denial of her motion to

vacate the arbitrator's decision was the confirmation thereof.

To determine the nature of the trial court's order, we begin by examining the pertinent portions of the established statutory scheme that governs judicial enforcement of the arbitration award in this case. See footnote 1 of this opinion. "Section 52-417 controls applications [and motions] for confirmation of an arbitration award and states in relevant part: At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. . . . The specific steps for applying for confirmation of an arbitration award are set out in [General Statutes] § 52-421 (a), which provides: Any party applying for an order confirming, modifying or correcting an award shall, at the time the order is filed with the clerk for the entry of judgment thereon, file the following papers with the clerk: (1) The agreement to arbitrate, (2) the selection or appointment, if any, of an additional or substitute arbitrator or an umpire, (3) any written agreement requiring the reference of any question as provided in section 52-415, (4) each written extension of the time, if any, within which to make the award, (5) the award, (6) each notice and other paper used upon an application to confirm, modify or correct the award, and (7) a copy of each order of the court upon such an application." (Internal quotation marks omitted.) *Rubin* v. *Brodie*, 225 Conn. App. 108, 114, 314 A.3d 1066 (2024).

Section 52-418, in turn, controls applications and motions to vacate an arbitration award and provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured

by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . .” “General Statutes § 52-420 (b) creates a time limitation on bringing a motion to vacate: ‘No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion.’ ” *Directory Assistants, Inc.* v. *Big Country Vein, L.P.*, 134 Conn. App. 415, 420, 39 A.3d 777 (2012).

Our Supreme Court has “recognize[d] that applications to confirm and applications to vacate arbitration awards are distinct statutory proceedings.” *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 271 Conn. 127, 143, 855 A.2d 964 (2004). To this end, “§§ 52-417 and 52-418 provide the jurisdictional requirements that are relevant to . . . applications to vacate and confirm . . . arbitration [awards].” *Lemma* v. *York & Chapel, Corp.*, 204 Conn. App. 471, 477, 254 A.3d 1020 (2021).

In this case, the plaintiff timely filed a motion to *vacate* the arbitrator’s decision pursuant to § 52-418, as part of the pending civil action she initiated prior to the inception of the arbitration proceedings, and the defendant filed an opposition thereto. In that opposition, the defendant simply argued that the plaintiff had not established that the arbitration award suffered from any of the defects enumerated in § 52-418 and that the plaintiff’s application should be denied. Importantly, the defendant did not argue, in its opposition, that the

court should *confirm* the arbitration award.[18] Cf. *Windham* v. *Doctor's Associates, Inc.*, 161 Conn. App. 348, 354–55, 127 A.3d 1082 (2015) (defendant filed combined "Opposition to . . . Motion to Vacate and . . . Application to Confirm Arbitration Award" requesting that court deny motion to vacate and confirm award (internal quotation marks omitted)).

Nor did the defendant file an application with the court, separate and apart from its objection, which sought an order that confirmed the arbitration award in accordance with § 52-417. See, e.g., *Aldin Associates Ltd. Partnership* v. *Healey*, 72 Conn. App. 334, 337, 804 A.2d 1049 (2002) (defendants filed objection to application to vacate arbitration award and separate motion to

[18] We carefully have combed through the defendant's twenty-six page opposition, which bears the title "[The defendant's] opposition to the plaintiff's motion to vacate," to ascertain whether the defendant expressly requested the court to confirm the award, or whether it used any language that might reasonably be construed as making such a request, and we conclude that the defendant did not do so. The defendant presented its entire argument under the heading "[The] plaintiff's motion to vacate should be denied" and solely focused on establishing that the provisions set forth in § 52-418 were not satisfied. Throughout its argument, the defendant posited, on four separate occasions, that the plaintiff's motion to vacate should, or must, "be denied," and it reiterated this single request for relief in the one sentence conclusion section of its opposition. The defendant made no reference to confirming the decision, nor did it seek to invoke the statutes that would have authorized the court to do so. As such, the substance of the defendant's "opposition to the plaintiff's motion to vacate" is consistent with its title and there is no basis on which to construe it as anything more than a request that the court deny the plaintiff's motion to vacate the arbitrator's decision. See, e.g., *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 320 n.7, 898 A.2d 197 ("[i]t is the substance of a motion . . . that governs its outcome" (internal quotation marks omitted)), cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006). Indeed, the court did not read an additional claim for relief into the defendant's opposition and neither will this court. Cf. *Wu* v. *Chang*, 264 Conn. 307, 309–10, 312, 823 A.2d 1197 (2003) (trial court treated objection to confirmation of arbitration award as motion to vacate arbitration award and parties did not challenge characterization on appeal); *Rosenthal Law Firm, LLC* v. *Cohen*, 165 Conn. App. 467, 468 n.1, 139 A.3d 774 (same), cert. denied, 322 Conn. 904, 138 A.3d 933 (2016).

confirm arbitration award); see also *Lemma* v. *York & Chapel, Corp.*, supra, 204 Conn. App. 475 (defendant filed application to vacate arbitration award and plaintiff, in response, filed application to confirm arbitration award). As such, neither party sought, by their filings, to invoke the provisions of § 52-417 to have the arbitration award confirmed in accordance with the statutory scheme pertaining to arbitration proceedings and the enforcement of arbitration awards.[19]

The court, in turn, confined its analysis to the requirements of § 52-418 when it denied the plaintiff's motion to vacate the arbitration award. It explained, in doing so, that "[a]n application to vacate or correct an award should be granted where an arbitrator has exceeded h[er] power," and it concluded that the arbitrator had not done so in this case. (Internal quotation marks omitted.) The court recited the law pertaining to the manifest disregard of the law standard and applied it to conclude that "the arbitrator's ruling granting the defendant's motion for summary judgment" did not violate § 52-418 (a) (4). The court also addressed the arbitrator's discretion to enforce deadlines and concluded that she did not commit misconduct, as contemplated by § 52-418 (a) (3), "when she refused to consider the

---

[19] We note that both parties had an interest in obtaining a final judgment in this case. Had the plaintiff taken successful steps to do so, either by seeking confirmation of the arbitrator's decision or by seeking a judgment thereupon, she would have unquestionably had the right to take an appeal to challenge the merits of the court's denial of her motion to vacate the arbitrator's decision. See General Statutes § 52-423. Had the defendant taken successful steps to do so, it could have secured an end to the very proceedings in the trial court it sought to avoid when it moved to compel the arbitration. See, e.g., *Bennett* v. *Meader*, 208 Conn. 352, 362–63, 545 A.2d 553 (1988) (stated purpose of arbitration is "avoiding the formalities, delay, expense and vexation of ordinary litigation" (internal quotation marks omitted)). Instead, the parties' inaction has led to an untenable situation whereby the case remains pending in the trial court with no definitive resolution in sight.

plaintiff's objection to the defendant's motion for summary judgment because it was untimely." Thus, the court denied the plaintiff's motion to vacate. The court did not, however, render judgment confirming the arbitration award after doing so. In fact, when the court denied the motion to vacate on September 8, 2023, the parties still had nearly three months within which to timely file a motion to confirm the arbitrator's decision in accordance with § 52-417, although, ultimately, neither party chose to do so. As such, the trial court may well have assumed that further proceedings would take place after it rendered its order.

Indeed, after the court denied her motion to vacate the arbitration award, the plaintiff could have filed a motion to confirm the award for the purposes of securing an order from which she could appeal. See General Statutes § 52-417. Alternatively, the plaintiff could have asked the court to render judgment on her complaint in the defendant's favor for the purpose of obtaining a final judgment and taking an appeal to challenge the merits of the court's decision to deny her motion to vacate the award. See General Statutes § 52-423. Notably, our rules employ a similar procedure with respect to the granting of motions to strike, which "ordinarily [are] not . . . final judgment[s] because our rules of practice afford a party a right to amend deficient pleadings." (Internal quotation marks omitted.) *Pellecchia* v. *Connecticut Light & Power Co.*, 139 Conn. App. 88, 90, 54 A.3d 658 (2012), cert. denied, 307 Conn. 950, 60 A.3d 740 (2013). If a complaint is stricken and the plaintiff does not replead, "the judicial authority may, *upon motion*, enter judgment against [the plaintiff] on said stricken complaint . . . . " (Emphasis added.) Practice Book § 10-44. Unless and until such motion is granted and judgment is rendered, however, there is no final judgment from which to appeal. See *Pellecchia* v. *Connecticut Light & Power Co.*, supra, 90. For this

reason, this court routinely dismisses appeals taken from the granting of motions to strike where judgment has not been rendered on the stricken claims. See id., 91; see also *Stevens* v. *Khalily*, 220 Conn. App. 634, 641 n.9, 298 A.3d 1254 (dismissing appeal taken from order granting motion to strike), cert. denied, 348 Conn. 915, 303 A.3d 260 (2023)**.**

It is apparent to us, therefore, that the parties presented, and the trial court ruled on, in substance, nothing more than a motion to vacate the arbitrator's decision, filed pursuant to § 52-418, and an objection thereto. Given that § 52-417 establishes an entirely separate and distinct statutory procedure by which to seek confirmation of an arbitrator's decision, which neither party followed, the court's denial of the plaintiff's motion to vacate the arbitrator's decision simply cannot be deemed to have "effectively" confirmed the decision.[20] Cf. *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, supra, 271 Conn. 143 ("[w]hen both an application to confirm an award and an application to vacate the award are pending before the same trial court and the court grants the application to confirm without ruling on the application to vacate . . . it is logical to assume that the ruling is premised on the court's prior consideration and rejection of the application to vacate").

Thus, under the circumstances of this case, we conclude that the court's denial of the plaintiff's application to vacate the arbitration award is not, in effect, an order

[20] Significantly, in adopting the revised act, the legislature specified in General Statutes § 52-407ww (d), which governs the vacating of awards made in relation to arbitration agreements made on or after October 1, 2018; see footnote 1 of this opinion; that, "[i]f the court denies a motion to vacate an award, it shall confirm the award unless a motion to modify or correct the award is pending." This notable departure from the provisions of § 52-418 further supports our determination as to the limited nature of the order the court issued in this case.

confirming the arbitration award and that § 52-423 does not provide us with jurisdiction to review the plaintiff's claims on appeal. Moreover, contrary to the suggestion of the plaintiff's counsel at oral argument before this court, this jurisdictional impediment cannot be "cured by obtaining a final judgment now." It is well settled "under our case law [that] appeals from nonfinal judgments are void ab initio"; *Clinton* v. *Aspinwall*, 344 Conn. 696, 709, 281 A.3d 1174 (2022); and "any attempt . . . to render the judgment final, nunc pro tunc," at this stage of the proceedings on appeal, would be "ineffectual." Id., 710.[21]

Because § 52-423 does not provide the plaintiff with an express right to appeal from the trial court's denial of her motion to vacate the arbitration award, we now consider whether that denial satisfies the finality test for interlocutory orders set forth in *State* v. *Curcio*, supra,191 Conn. 31. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 495–98; *Torrington* v. *Council 4, AFSCME, AFL-CIO, Local 442*, supra, 224 Conn. App. 242–43. We conclude that it does not.

_____

[21] The plaintiff could have, however, "cured" the final judgment problem at an earlier point in these proceedings, but she made no attempt to do so. Practice Book (2023) § 61-9 provides in relevant part: "Should the trial court, subsequent to the filing of a pending appeal, make a decision that the appellant desires to have reviewed, the appellant shall file an amended appeal within twenty days from the issuance of notice of the decision as provided for in Section 63-1. . . . If the original appeal is dismissed for lack of jurisdiction, any amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed. . . ."

As such, if, after filing this jurisdictionally infirm appeal, the plaintiff had filed, and the trial court had granted, either a motion to confirm the arbitrator's decision or a motion for judgment on her complaint in the defendant's favor, the plaintiff could have filed an amended appeal from a final judgment, and that amended appeal would have been properly before this court. See Practice Book (2023) § 61-9; see also *Stevens* v. *Khalily*, supra, 220 Conn. App. 641 n.9.

We begin by observing that our Supreme Court applied the *Curcio* test under remarkably similar circumstances in *Hartford Steam Boiler*. After first concluding that the trial court's remand to an arbitration panel for a rehearing to clarify the award was not appealable under § 52-423 because the court did not intend by that order to "vacate the award, or otherwise confirm, modify or correct it"; *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 496; our Supreme Court further concluded that neither *Curcio* prong was satisfied. Id., 496–98. Our Supreme Court began by explaining that, "[i]n both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . . The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*." (Citations omitted; internal quotation marks omitted.) Id., 496. The court further explained that the trial court's remand for a rehearing to clarify the award, "so that the court will know exactly what it is being asked to enforce . . . is indicative of the ongoing and unfinished nature of the process leading to a final judgment by the court," and thus did not satisfy *Curcio*'s first prong. (Citation omitted; internal quotation marks omitted.) Id., 497.

Similarly, in this case, the court's order denying the plaintiff's motion to vacate the arbitrator's decision did

not terminate a separate and distinct proceeding. The order was issued in the context of the plaintiff's ongoing employment discrimination action, which remains pending before the trial court, awaiting the entry of a final judgment. Indeed, as we previously have stated, the trial court has not yet been asked to enforce the arbitrator's decision, although both parties may still ask it to do so. See *Spearhead Construction Corp.* v. *Bianco*, 39 Conn. App. 122, 130, 665 A.2d 86, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). Although one year has passed since the arbitrator rendered her decision; see General Statutes § 52-417; this court has explained that the statutory procedures set forth in "§ 52-417 (application to confirm), § 52-418 (application to vacate) or [General Statutes] § 52-419 (modification or correction of award) . . . are not the exclusive means for judicial enforcement of an arbitration award but rather are an expeditious means to turn a voluntary contractual proceeding into a judgment of the court for purposes of executing on, or enforcement of, the arbitration award." *Spearhead Construction Corp.* v. *Bianco*, supra, 39 Conn. App. 130. With respect to § 52-417 in particular, we adopted reasoning the trial court employed when denying a defendant's motion for summary judgment that claimed the plaintiff was prevented from seeking to otherwise enforce an arbitration award it had not sought to confirm thereunder, as follows: "There are no provisions contained in § 52-417 which require that an application to confirm an arbitration award must be made. In the absence of a motion to confirm the award, the parties would be left to their common law remedies. Under our common law, prior to the statute providing for an application to confirm an award, an arbitration award was in the nature of a judgment and the remedy for a party to an arbitration was to bring an action on the award." (Internal quotation marks omitted.) Id., 132. As such, the failure to

seek relief under § 52-417 does not leave the parties without any recourse with respect to seeking judicial enforcement of the arbitrator's decision, and they may still attempt to do so within the context of the plaintiff's pending action if they so choose. See *Franco* v. *East Shore Development, Inc.*, 271 Conn. 623, 632–33, 858 A.2d 703 (2004).

Moreover, the challenged order is not severable from the employment discrimination action as it directly relates to the plaintiff's right to recover on the merits of her claim. Thus, the court's order is merely a step along the road to a final judgment and is not appealable under the first prong of the *Curcio* test. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 495–98.

We further conclude that the denial of the motion to vacate does not satisfy the second prong of the *Curcio* test, which "focuses on the nature of the right involved . . . [and] requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . An essential predicate to the applicability of this prong is the identification of jeopardy to [either] a statutory or constitutional right that the interlocutory appeal seeks to vindicate." (Citation omitted; internal quotation marks omitted.) Id., 497. "[Our Supreme Court has] said that the claimed right cannot be a contingent right created by statute and subject to the discretion of the trial court . . . rather, the right must exist independently of the order from which the appeal is taken. . . .

"Moreover, even when an order impinges on an existing right, if that right is subject to vindication after trial, the order is not appealable under the second prong

of *Curcio*." (Citations omitted; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 231, 901 A.2d 1164 (2006).

In the present case, the court's order denying the plaintiff's motion to vacate the arbitrator's decision does not implicate a statutory or constitutional right belonging to the plaintiff. Rather, as our earlier discussion illuminates, the right the plaintiff seeks to vindicate by this appeal is a contingent right created by § 52-418 which is subject to the discretion of the court. Moreover, the plaintiff will be able to seek vindication of that right following the entry of a judgment or decree on the award that ultimately disposes of her complaint. See, e.g., *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 497–98 ("[a]fter the trial court's review of the arbitration panel's clarifying decision, wherein it will confirm, modify, vacate or correct the award, both [parties] will be free to appeal any adverse final decision by the court").

Because we conclude that the court's order denying the plaintiff's motion to vacate the arbitrator's award does not constitute a final judgment and does not satisfy either prong of the *Curcio* test, we lack subject matter jurisdiction to review the merits of this appeal. We emphasize, in reaching this conclusion, that "[s]trict adherence to the requirements of the final judgment rule under the present circumstances serves two important purposes. First, the rule is jurisdictional, and we are not at liberty to expand our jurisdiction merely because it seems expedient to do so. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 40, 213 A.3d 1110 (2019) ('Neither the parties nor the trial court . . . can confer jurisdiction [on an appellate] court. . . . [E]xcept insofar as the legislature has specifically provided for an interlocutory appeal or

other form of interlocutory appellate review . . . appellate jurisdiction is limited to final judgments of the trial court.' . . .)). An appeal by [the plaintiff] may be inevitable . . . [but] [t]hat circumstance does not allow [her] to jump the gun by obtaining appellate review before the judgment is final. Second, even apart from jurisdictional considerations . . . one of the principal purposes served by the final judgment rule is to prevent piecemeal appeals. Permitting a party to appeal a nonfinal judgment creates the risk of fragmented trial and appellate proceedings." *Benvenuto* v. *Brookman*, 348 Conn. 609, 624–25, 309 A.3d 292 (2024).

If we were to reach the merits of the plaintiff's appeal and conclude that the court correctly determined that the arbitrator's decision did not suffer from any of the defects set forth in § 52-418 and, thus, properly declined to vacate it, our affirmation of the court's order would not necessarily put an end to the trial court proceedings.[22] See id. As such, the plaintiff would have an opportunity to return to the trial court and, perhaps, argue that the arbitrator's decision did not resolve all of her claims. See, e.g., *Spearhead Construction Corp.* v. *Bianco*, supra, 39 Conn. App. 132 ("[a]n arbitration award, confirmed or not, has the preclusive effect *regarding issues of law and fact litigated before and determined by the arbitration panel*" (emphasis added;

---

[22] Given the procedural posture of this case, in which the arbitration agreement is governed by part II of chapter 909; see footnote 1 of this opinion; and neither party has filed a motion to confirm the arbitrator's decision, but both still have the right to secure a judgment or decree upon the decision and/or to exercise their common-law remedies with respect to securing judicial enforcement of the decision, it would not be appropriate for this court to direct judgment were we to affirm the propriety of the court's denial of the motion to vacate. See General Statutes § 52-423; *Spearhead Construction Corp.* v. *Bianco*, supra, 39 Conn. App. 132; cf. General Statutes § 52-407ww (d) (for arbitration agreements made on or after October 1, 2018, "[i]f the court denies a motion to vacate an award, it shall confirm the award unless a motion to modify or correct the award is pending").

internal quotation marks omitted)). Indeed, she has argued in her brief to this court that the defendant failed to move for summary judgment as to certain of her claims and that, consequently, the arbitrator never addressed those particular claims in her decision. "We consider it far preferable to entertain a single appeal raising all appellate claims emanating from a single case, unless the circumstances require interlocutory review under an established exception to the final judgment rule." *Benvenuto* v. *Brookman*, supra, 348 Conn. 625.

The appeal is dismissed.

In this appeal the other judges concurred.